**E-Filed 2/27/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARTER OAK FIRE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>SODEXHO MARRIOTT, et al.,<br><br>                    Defendants.<br><br>AND CONSOLIDATED ACTION AND RELATED CROSS-ACTION | Case Number C 02-03894 JF<br><br>ORDER[1] DENYING HAMILTON BEACH'S MOTION FOR SUMMARY JUDGMENT<br><br>[Docket No. 77] |

## I. BACKGROUND

On February 22, 2002, Plaintiffs Karen Whyman ("Whyman") and Charter Oak Fire Insurance Company ("Charter Oak")[2] initiated the present action by filing a complaint in the

---

[1] This disposition is not designated for publication and may not be cited.

[2] In previous pleadings, St. Paul Travelers Insurance Company was identified as a Plaintiff. On November 7, 2005, parties stipulated to the identifying the Plaintiff insurance company as Charter Oak Fire Insurance Company, which is a part of St. Paul Travelers Insurance

Santa Clara Superior Court.  The original complaint alleged two claims, strict liability and negligence, against Defendants Sodexho, Inc. ("Sodexho"), Hamilton Beach/Proctor Silex, Inc. ("Hamilton Beach"), and Does 1-30.  On April 30, 2002, Sodexho filed a cross-complaint against Hamilton Beach and Does 1-30 for indemnification.  Defendants removed the action to this Court on August 13, 2002.  On November 7, 2005, this Court issued an Order granting Whyman's motion for leave to file a first amended complaint, which includes a new claim against Sodexho for premises liability, modifies the original two claims, and specifies which claims are filed against which Defendants.  Hamilton Beach now moves for summary judgment.  Whyman, Charter Oak, and Sodexho oppose the motion.

       The toaster that caused Whyman's injury was located in the Aruba Café, operated by Sodexho, on the Hewlett Packard campus in Cupertino, California.   The toaster  is a Proctor-Silex Model 22225, Type T16, Series B4900S two-slice toaster manufactured by Hamilton Beach in 2000.  Declaration of John J. Datovech in Support of Hamilton Beach's Motion for Summary Judgment ("Datovech Decl."), ¶ 4.  Alane Webb ("Webb"), who worked for Sodexho, purchased the toaster at Target for $7.99 on January 26, 2001, just one month before the injury occurred.  Kelly Decl., Ex. C, pp. 32-33, 40, and 43.  The label on the bottom of a Model 22225 toaster states: "HOUSEHOLD USE ONLY / READ INSTRUCTION BOOK BEFORE USE."  Datovech Decl., ¶ 11.  Webb did not notice anything wrong with the toaster or the toaster's knob when she purchased, unwrapped, and tested it.  *Id*., pp. 50, 54, and 85.  Veronica Sanchez ("Sanchez"), who worked at the Aruba Café, also has testified that the toaster functioned properly when she tested it.  Kelly Decl., Ex. B, p. 30.  Neither Webb nor Sanchez read the toaster's instructions.  *Id*., p. 29; Kelly Decl., Ex. C, p. 47.  Sanchez has testified that there were a couple of complaints from customers that the lever would not stay down.  *Id*., p. 32-33.  Later, the knob came off of the toaster, and, though Sanchez put it back on, it continued to fall off.  *Id*., p. 44-45.

       On February 23, 2001, Whyman went to the Aruba Café for a break and placed an

---

Company.

English muffin in the toaster. Declaration of Daniel J. Kelly in Support of Hamilton Beach's Motion for Summary Judgment ("Kelly Decl."), Ex. A, p. 58. Whyman's right hand and forearm were leaning on a microwave while she pressed the toaster lever with her left hand. *Id*. She felt a current pass through her arm, her eyes rolled up in her head, she lost her balance, and caught herself on nearby furniture. *Id*. at 58-59.

John J. Datovech ("Datovech"), the Manger of Product Assurance & Licensing Quality for Hamilton Beach, examined the toaster on June 21, 2004. Datovech Decl., ¶¶ 1, 4. David L. Walters ("Walters"), a Senior Engineering Specialist with the St. Paul Travelers Insurance Company, examined the toaster in April, 2004. Declaration of David L. Walters in Support of Plaintiff Charter Oak Fire Insurance Company's Opposition to Defendant Hamilton Beach's Motion for Summary Judgment ("Walters Decl."), ¶¶ 1-2. Both Datovech and Walters noted that the wire bread guide, which holds food in the toaster while it is being toasted, was damaged such that it could come either close to or in direct contact with the heating element. Datovich Decl., ¶ 5(c); Walters Decl., Ex. A. They also noted that the thermoplastic knob was missing from the toaster's metal extension arm. Datovich Decl., ¶ 5(a); Walters Decl., Ex. A, photo 6. Datovech explained that: "[w]hen the toaster is energized, and the heating element wires contract the grill wire, the extension arm becomes energized. A shock potential exists if the user is grounded." Datovich Decl., ¶ 5(d).

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to

present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

Hamilton Beach contends that because it has pointed out that there is an absence of evidence to support Plaintiffs' and Sodexho's case, Plaintiffs and Sodexho now must present evidence tending to prove each element of their case in order to defeat summary judgment. Sodexho argues that under California law, a product may "be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 432 (1978). However, while this holding is specific to the burdens of proof for establishing the design defect prong of a strict product liability claim, it does nothing to affect the burden of proof generally on a summary judgment motion brought in federal court.

### III. DISCUSSION

Plaintiffs allege claims for strict product liability and negligent product liability against Hamilton Beach. As a cross-complainant, Sodexho seeks equitable indemnity and comparative contribution from Hamilton Beach. Hamilton Beach moves for summary judgment on the ground that Plaintiffs and Sodexho cannot establish the elements necessary to establish a claim for strict product liability.

The elements of strict product liability are very similar to those of negligent product liability. "Strict liability differs from negligence in that it eliminates the necessity for the injured party to prove that the manufacturer of the product which caused injury was negligent." *Brown v. Superior Court*, 44 Cal.3d 1049, 1056 (1988). California courts have "observed that in deficient design cases 'strict liability and negligence claims merge.'" *DeLeon v. Commercial Manufacturing & Supply Co.*, 148 Cal.App.3d 336, 348 (1983) (quoting *Balido v. Improved Machinery, Inc.*, 29 Cal.App.3d 633, 640 (1972)). The elements of a strict products liability claim are:

> (1) [T]he product reached plaintiff without substantial change in its condition;
> (2) the product was used in the manner intended; and
> (3) plaintiff was injured as a result of a defect in the product, of which the plaintiff was not aware, making the product unsafe for its intended use.

*Milwaukee Electric Tool Corp. v. Superior Court*, 15 Cal.App.4th 547, 559 (1993) (quoting 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 579, pp. 617-18.)

Because the Court concludes that a reasonable jury could find each element required for strict and negligent product liability, as is discussed below, it will deny Hamilton Beach's motion for summary judgment.

*1. Whether the toaster reached Plaintiff without substantial change in condition*

Hamilton Beach argues that Plaintiffs and Sodexho cannot establish that the toaster was in a defective condition when it left Hamilton Beach's control. As stated above, both Webb and Sanchez have testified that they did not notice any defects in the toaster or the toaster's nob when it was purchased. In addition, Datovech submitted a declaration in which he testifies about the quality control inspection and testing procedures performed on Hamilton Beach model 22225 toasters at the factory. Datovech Decl., ¶¶ 6-10. He states that "the thermoplastic bread lifter knob was attached to the subject toaster's extension arm," "the grill wires and grill wire assembly were not bent," and "the grill wires were not contacting the heating element wires." *Id.*, ¶ 10. Plaintiffs and Sodexho argue that Datovech does not in fact have any personal knowledge of the condition that the toaster was in when it left the factory. Datovich "personally visited the factory

where all Type T16 toasters were being manufactured in 2000," and has "firsthand knowledge of the manufacturing process for the model 22315—which is the same manufacturing process for the model 22225: both models were produced during the same time frame on the very same production line." Declaration of John J. Datovech in Reply to Opposition to Hamilton Beach's Motion for Summary Judgment ("Reply Datovech Decl."), ¶ 4. However, Datovech also has testified that he requested documents regarding production or testing of the 22225 model from someone at the factory, but that such documents were not found. Declaration of Jerry Gans in Support of Opposition to Motion for Summary Judgment, Ex. 1, p. 2.

The issue is not whether the knob was attached or the grill wires were bent and in contact with the heating element wires at the time it left Hamilton Beach's control, but instead whether there was a defect in the toaster's design that made these particular problems foreseeable. Neither party argues that the knob was lost or the grill wires were bent when Sodexho purchased the toaster. Accordingly, the relevant questions are those discussed below: whether the toaster was used in the manner intended and whether it had a design defect.

*2. Whether the toaster was used in the manner intended*

Hamilton Beach argues that because the toaster was intended for household rather than commercial use and was not taken out of service after it became clear that it was not working properly, the toaster was not used in the manner intended. Hamilton Beach notes the following "Important Safeguards" included in the toaster's Use & Care guide:

> 2. Do not touch hot surfaces. Use handles or knobs
>
> . . .
>
> 6. Do not operate toaster with a damaged cord or plug or after toaster malfunctions or has been damaged in any manner.
>
> . . .
>
> 15. This product is for household use only.

Datovech Decl., Ex. B, p. 2. In response, Plaintiffs and Sodexho argue that the use of the toaster as a toaster is foreseeable, and that it is irrelevant that it was used in a commercial establishment.

1  Furthermore, they point out that, because the toaster was designed defectively, it was foreseeable
2  that the wires could bend and that the thermoplastic knob could fall off.
3      The Court concludes that in this case foreseeability is a question of fact for the jury. As
4  Plaintiffs and Sodexho point out, some product misuse is foreseeable. *See, e.g.*, *Boeken v. Philip*
5  *Morris Inc.*, 127 Cal.App.4th 1640, 1668 (2005) ("Some degree of misuse and abuse of the
6  product is foreseeable.") (*Huynh v. Ingersoll-Rand*, 16 Cal.App.4th 825, 833 (1993)). While the
7  precise nature of the use—or misuse—of the toaster, and whether this use was foreseeable, is not
8  entirely clear, there is sufficient evidence from which a reasonable jury could conclude that the
9  toaster was used in a way that was reasonably foreseeable. There is no evidence that the toaster
10 was used as anything other than a toaster. Moreover, although counsel speculated at oral
11 argument that the damage to the toaster could have resulted from unknown, unforeseeable misuse
12 such as vandalism, there is no evidence of any such vandalism or extreme misuse.

14 *3. Whether the toaster had a design defect*
15      Under California law, there are two tests by which a plaintiff may establish that a product
16 has a design defect. First, "[t]he 'consumer expectation test' permits a plaintiff to prove design
17 defect by demonstrating that 'the product failed to perform as safely as an ordinary consumer
18 would expect when used in an intended or reasonably foreseeable manner.'" *McCabe v.*
19 *American Honda Motor Co.*, 100 Cal.App.4th 1111, 1120 (2002) (quoting *Barker v. Lull*
20 *Engineering Co.*, 20 Cal.3d 413, 426-27 (1978)). Under this test, "[s]ome degree of misuse and
21 abuse of the product is foreseeable." *Boeken v. Philip Morris Inc.*, 127 Cal.App.4th 1640, 1668
22 (2005) (citing *Huynh v. Ingersoll-Rand*, 16 Cal.App.4th 825, 833 (1993)).
23      Second, under the "'risk-benefit test,'" "'products that meet ordinary consumer
24 expectations nonetheless may be defective if the design embodies an 'excessive preventable
25 danger.'" *Id.* (quoting *Barker*, 20 Cal.3d at 430; *Soule v. General Motors Corp.*, 8 Cal.4th 548,
26 567 (1994)). Under second test, "a plaintiff need only demonstrate that the design proximately
27 caused the injuries. Once proximate cause is demonstrated, the burden shifts to the defendant to
28 establish that the benefits of the challenged design, when balanced against such factors as the

feasibility and cost of alternative designs, outweigh its inherent risk of harm." *Id*. (quoting *Barker*, 20 Cal.3d at 431; *Soule*, 8 Cal.4th at 562).

Plaintiffs and Sodexho argue that the toaster's design was defective in two respects. First, they argue that because it was foreseeable that certain use or misuse would cause the wires to bend, it was a design defect not to have sufficient insulation between the heating elements and the grill wires. Second, they argue that the thermoplastic knob was not adequately secured and the testing of the security of the knob's attachment was insufficient. Miller stated that "[t]he plastic handle could have been easily secured by means of a set screw through the bread lifter hook. The metal used for the bread guide is easily bent and without the guide being mechanically secured at both ends of the toaster, it can be easily deformed." Miller Decl., ¶ 25.[3] Plaintiffs and Sodexho assert that the bending of the grill wires was reasonably foreseeable because the toaster instructions include the following tip: "Thick foods may become wedged in the toaster slot. If the food is not released, unplug the toaster and let cool. Use a wooden utensil to remove food." Datovech Decl., Ex. B, p. 4.

The Court concludes that Plaintiffs have presented sufficient evidence from which a reasonable jury could conclude that the design of the toaster was defective.

*4. Failure-to-warn liability*

As Whyman correctly argues, under California law, a "'manufacturer owes a foreseeable user of its product a duty to warn of risks of using the product.'" *Huynh v. Ingersoll-Rand*, 16 Cal.App.4th 825, 833 (1993) (quoting *Powell v. Standard Brands Paint Co.*, 166 Cal.App.3d 357, 362 (1985)). Whyman argues that "no warnings concerning the potential for electric shock from prescribed use of the toaster, nor from using a utensil to dislodge stuck food items as prescribed by the guide, were placed on either the toaster or in the Use and Care Guide." The

---

[3] Hamilton Beach objects to this portion of Miller's declaration on the grounds that Miller lacks personal knowledge and foundation. The Court overrules this objection because Miller's declaration shows that he has the engineering qualifications sufficient to understand the attachment mechanism of a knob to a toaster handle and that he examined the toaster at issue.

following "Important Safeguards" are included in the toaster's Use & Care guide:

> 2. Do not touch hot surfaces. Use handles or knobs
>
> . . .
>
> 6. Do not operate toaster with a damaged cord or plug or after toaster malfunctions or has been damaged in any manner.
>
> . . .
>
> 15. This product is for household use only.

Datovech Decl., Ex. B, p. 2. However, the guide does not warn specifically about the type of electrocution that Whyman experienced. Accordingly, the Court concludes that there is a genuine issue of material fact with respect to whether the warnings included in the Use & Care guide satisfied Hamilton Beach's duty to warn.

*5. Superseding cause*

Hamilton Beach next argues that Sodexho's use, or misuse, of the toaster constitutes a superseding cause that precludes any liability on the part of Hamilton Beach. As Hamilton Beach itself notes, the doctrine of superseding cause is: "Intervening negligence cuts off liability, and becomes known as a superseding cause, if ''it is determined that the intervening cause was not foreseeable *and* that the results which it caused were not foreseeable . . . .''" *Martinez v. Vintage Petroleum, Inc.*, 68 Cal.App.4th 695, 700-701 (1998). As discussed above, the Court concluded that there is a triable issue of fact with respect to whether the damage caused to the toaster was foreseeable. Accordingly, summary adjudication that a superseding cause precludes Hamilton Beach's liability is not appropriate.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Hamilton Beach's motion for summary judgment is DENIED.

1  DATED: February 27, 2006

                                    _____
                                    JEREMY FOGEL
                                    United States District Judge

Case No. C 02-03894 JF
ORDER DENYING HAMILTON BEACH'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

This Order has been served upon the following persons:

| | |
|---|---|
| Donald W. Carlson | dcarlson@ccplaw.com, mjones@ccplaw.com; kamnott@ccplaw.com; strumbull@ccplaw.com |
| Brian Doster Chase, Esq | bchase@bestattorney.com |
| Daniel J. Kelly | dkelly@hbblaw.com, bdennis@hbblaw.com |
| Gavan R. Munter | gmunter@spt.com, vwatkins@spt.com |

Case No. C 02-03894 JF
ORDER DENYING HAMILTON BEACH'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)