IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARTER OAK FIRE INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SODEXHO MARRIOTT, et al., <br><br> Defendant. | No. C 02-03894 CRB <br><br> **ORDER** |

Charter Oak Fire Insurance Company ("Charter Oak") has paid $444,588.92 to Karen Whyman ("Whyman") in satisfaction of a claim for workers' compensation. The question now pending before this Court is whether, for what purpose, and to what extent, this payment may be adduced by Charter Oak as evidence in support of its lawsuit against Sodexho Marriott ("Sodexho"), a third party that allegedly caused Whyman's injuries.

**BACKGROUND**

Karen Whyman claims that she was electrocuted by a toaster. Because this accident occurred at a café in an office building where she works, Whyman has obtained $444,588.92 under a workers' compensation policy issued by Charter Oak. In addition, Whyman initiated this lawsuit against two parties whose conduct may have led to her electrocution. These two alleged tortfeasors are: Hamilton Beach, the manufacturer of the toaster, and Sodexho, the

company that runs the café where the accident took place. A third potential tortfeasor--Hewlett Packard, which owns the office building where Whyman works--was not named as a defendant in the case.

Charter Oak also brought a claim against these two alleged tortfeasors. The basis for the insurer's claim was Section 3852 of the California Labor Code. This statute provides that an insurer who becomes obligated to pay a claim for workers' compensation due to the negligent conduct of a third party may bring suit against that third party for reimbursement.

Whyman and Charter Oak then settled their respective claims against the toaster manufacturer, Hamilton Beach. Under the terms of a settlement agreement, Hamilton Beach agreed to pay $500,000, of which $400,000 was paid to Whyman and $100,000 was paid to Charter Oak. Next, Whyman individually settled her claims against Sodexho, the café operator. Charter Oak was not covered by that settlement agreement. See Cal. Labor Code §§ 3859(b), 3860. As a result, the only claim remaining in this action is Charter Oak's subrogation claim against Sodexho.

In two pre-trial motions, Charter Oak and Sodexho each raised questions about the evidentiary value and legal effect of the $444,588.92 payment made by Charter Oak to Whyman pursuant to her workers' compensation claim. On the one hand, Charter Oak filed a motion *in limine* arguing that the Court should allow it to introduce evidence of the payments it made to Whyman. Charter Oak claims that such evidence is necessary to prove the amount of its "damages" and thereby to establish the extent of Sodexho's liability. On the other hand, Sodexho has filed a motion *in limine* to exclude all evidence of workers' compensation payments. Sodexho claims that, because such payments are based a workers' compensation policy and California labor law, they are not relevant to the central issues of this action--namely, whether Sodexho's negligence caused injury to Whyman, and what injuries she may have suffered as a result of that negligence.

## DISCUSSION

California law sets forth a statutory remedial scheme for employees who are injured on the job. In general, "when a worker is entitled to workers' compensation benefits for an

injury, those benefits constitute the worker's exclusive remedy *against his or her employer* for injuries sustained in the course of employment." Phelps v. Stostad, 16 Cal. 4th 23, 30 (1997) (citing Cal. Labor Code § 3602(a)). An injured worker, however, is not limited to bringing claims against an employer. To the contrary, the worker also may bring suit against any third party who may be responsible for the worker's injuries. Id. (citing Cal. Labor Code § 3852). "Likewise, an employer who pays or becomes obligated to pay workers' compensation benefits to an injured employee may seek reimbursement from the third party." Id. (citing Cal. Labor Code § 3852). An "employer," which under California law is defined to include an "insurer" such as Charter Oak, see Cal. Labor Code § 3850(b), may seek reimbursement in one of three ways--either by pursuing a claim against the third party on its own, see id. §§ 3852, 3856(a); by pursuing a claim in conjunction with a lawsuit by the employee, see id. §§ 3853, 3856(c); or by asserting a lien against any recovery obtained by the employee in a separate action, see id. § 3856(b). See generally Employers Mut. Liab. Ins. Co v. Tutor-Saliba Corp., 17 Cal.4th 632 (1998); County of San Diego v. Sanfax Corp., 19 Cal.3d 862 (1977); Quinn v. State of California, 15 Cal.3d 162 (1975).

The question now presented in this case--which formerly involved an employee but now involves only an insurer's subrogation claim--relates to the evidentiary value and legal effect of Charter Oak's payment to Whyman of $444,588.92 in workers' compensation. This question is directly addressed by the California Labor Code, which states:

> If the action is prosecuted by the [insurer] alone, evidence of any amount which the [insurer] has paid or become obligated to pay by reason of the injury or death of the employee is admissible, and such expenditures or liability shall be considered as proximately resulting from such injury or death in addition to any other items of damage proximately resulting therefrom.

Cal. Labor Code § 3854. Based on this statute, Charter Oak argues that its payment of $444,588.92 is "the minimum damages suffered by the [insurer] once the tortfeasor's negligence has been established" and that Sodexho "is not entitled to challenge the amount of the payments made." Pl. Charter Oak and Fire Insurance Co.'s Opp. to Sodexho's Mot. in Limine No. 1, at 2-3. In the same vein, Charter Oak contends that Sodexho may only challenge whether it acted negligently, and whether its negligence caused injury to Whyman.

3

Charter Oak argues that the amount of its recovery is not subject to challenge, and that if it is found to have been negligent and to have caused injury to Whyman, Sodexho must reimburse Charter Oak for the full amount of the workers' compensation payments it made.

The California Supreme Court, however, has considered and explicitly rejected this construction of the statute. In <u>Breese v. Price</u>, 29 Cal. 3d 923 (1981), the court stated:

> [The insurer] argues that the proper interpretation of section 3854 is that payments made pursuant to workers' compensation proceedings are conclusively established as "proximately resulting" from the tortfeasor's conduct and therefore automatically recoverable against the tortfeasor. (See <u>State Compensation Insurance Fund v. Williams</u> (1974) 38 Cal.App.3d 218 [112 Cal.Rptr. 226]; <u>Board of Administration v. Ames</u> (1963) 215 Cal.App.2d 215 [29 Cal.Rptr. 917].)
>
> Section 3854 does not compel the construction urged by [the insurer]. The statute identifies the evidence which is admissible in tort actions as being of payments made "*by reason* of the injury or death of the employee" and provides that "*such* expenditures . . . shall be considered as proximately resulting from such injury . . . ." (Italics added.) In so describing the admissible evidence, the statute, in our view, clearly contemplates reimbursement for those payments only which were made "by reason of" the injury. The statutory language does not suggest any abandonment of the traditional concepts of "proximate cause" or "reasonableness" in defining the damages recoverable by an employer within this context. It does not purport to impose absolute liability on the third party tortfeasor for any expenses of the employer without the traditional nexus between those expenses and the tortfeasor's conduct. Any contrary holding which denied defendant an opportunity to be heard on the causation and reasonableness issues would contain serious due process implications.
>
> In our view, section 3854's mandate that the employer's expenditures "shall be considered as proximately resulting from [the employee's] injury" reasonably can be read as a legislative direction (1) that the intervening act of an employer's payment to the employee of compensation shall not be construed as breaking the chain of causation which is essential to a plaintiff's recovery under traditional negligence principles; and (2) that the employer is entitled to full reimbursement provided defendant's tort liability, in an amount equal to or in excess of the employer's expenditures, is otherwise established.

<u>Id.</u> at 928-29. The interpretation of the statute now advanced by Charter Oak is identical to the one advanced by the insurer, and rejected by the California Supreme Court, in <u>Breese v. Price</u>. To the extent that Charter Oak suggests that such an interpretation of the statute is appropriate, it simply misreads <u>Breese</u>.

To be sure, there are strong arguments that may be advanced in support of Charter Oak's preferred interpretation of Section 3854. After all, questions about the admissibility and legal effect of workers' compensation payments in subsequent legal proceedings raise

4

thorny policy questions. On the one hand, Charter Oak rightly points out that its preferred interpretation of the statute helps ensure that "the third party is liable for all the wrong his tortfeasance brought about," Smith v. County of Los Angeles, 276 Cal.App.2d 156, 162 (1969); promotes "a clear legislative policy militating in favor of reimbursement whenever possible," C.J.L. Constr., Inc. v. Universal Plumbing, 18 Cal.App.4th 376, 384 (1993); and supports "a corresponding public policy to reduce the cost of compensation insurance by allowing carriers to recoup payments" without the necessity of litigating those claims repeatedly, Abdala v. Aziz, 3 Cal.App.4th 369, 376-377 (1992).

On the other hand, a rule of automatic reimbursement raises the danger that an insurer and an employee could arrange for collusive compensation payments, knowing that a third-party tortfeasor would eventually be required to foot the entire bill. The California Supreme Court articulated precisely this concern in Breese, whose facts gave rise to at least the inference of such collusion. See 29 Cal. 3d at 926, 931 (noting that the insurer in the case had given "no explanation" for the disparity between the employee's estimated medical damages and the greater amount paid by the insurer, and observing that "a *guarantee* of reimbursement . . . would, in our view, inevitably tend to lessen the incentive [of the insurer] to dispute questionable claims"). As the court noted, it would be "manifestly unfair" and would raise "serious due process [concerns]" if a rule of absolute reimbursement were imposed on a third party that is not present when the extent of his liability is being determined. Moreover, the Supreme Court observed that this dilemma is not limited to cases such as Breese that involve apparent collusion. Because the moral hazard raised by a rule of absolute reimbursement exists in *every* case, and not merely those where the facts suggest intentional collusion--as the California Supreme Court said, the problem "is more one of degree than of kind," Breese, 29 Cal. 3d at 931--that court concluded that it was appropriate to construe the statute in a manner that requires an insurer to be vigilant in guarding against spurious claims.

The two sides of this policy debate are rehearsed at length in many California cases, which demonstrate a conceptual struggle between some courts that characterize an insurer's

claim against a third-party tortfeasor as rooted in principles of equitable subrogation, and other cases that characterize the insurer's claim more as a claim rooted in principles of indemnity. See, e.g., Fremont Comp. Ins. Co. v. Sierra Pine, Ltd., 121 Cal. App. 4th 389, 397-400 (2004) (discussing various cases in which these two conceptions of an insurer's or employer's claim have been in conflict, and suggesting that the Supreme Court's decision in Breese was rooted in a flawed understanding of the insurer's claim). It is not for this Court, however, to determine which side has the better argument in this policy debate. Nor is it the task of this Court to determine which side offers an interpretation of Section 3854 that is most consistent with the text and structure of the remedial scheme set forth by the California legislature. The California Supreme Court has already squarely addressed that issue, at least as it relates to the proper interpretation of Section 3854. See Breese v. Price, 29 Cal. 3d at 929 (stating that, insofar as the law permits a carrier to seek reimbursement from a third-party tortfeasor, California law "does not enlarge the tort remedy of a compensation carrier beyond that of the injured employee"). Of course, the California Supreme Court's construction of Section 3854 is binding on this Court. See Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.").

     Charter Oak has offered no persuasive authority, and this Court has identified none, that undermines or calls into question the California Supreme Court's decision in Breese. As noted above, Charter Oak's citation to Fremont is inapposite. That case aptly demonstrates the conceptual tension between the narrow understanding of the insurer's claim espoused in Breese and the broader understanding of an insurer's claim for subrogation set forth in many other California decisions. But Fremont does not say anything about the narrow legal issue presented here, *i.e.* the legal effect of its workers' compensation payments on a subsequent claim for subrogation. Charter Oak's citation to Mendenhall v. Curtis, 102 Cal. App. 3d 786 (1980), is also unavailing. The Mendenhall case supports the two propositions for which it was cited and approved by the California Supreme Court in Breese--namely, that the insurance carrier must demonstrate the defendant acted negligently, and that such negligence

6

was the proximate cause of injury to the employee. As to the more narrow issue presented here--whether the carrier's payments under a compensation plan constitute conclusive evidence of the employee's injuries once causation is established--the Mendenhall decision is at odds with the California Supreme Court's subsequent ruling in Breese. Compare Mendenhall, 102 Cal. App. 3d at 791 (holding that "the amount of workers' compensation benefits which the employer has paid or has been obligated to pay constitutes the minimum damage suffered by the employer and that the third party is precluded from litigating the reasonableness of that amount"), with Breese, 29 Cal. 3d at 930-31 (holding that "an employer seeking reimbursement for compensation payments bears the burden of establishing that a defendant's negligence is the proximate cause of an employee's injuries and the amount of tort damages reasonably resulting therefrom," and stating that "[n]o valid public policy would be served" by "a *guarantee* of reimbursement"). Between these two decisions, the California Supreme Court's subsequent decision in Breese is controlling.

The only post-Breese authority provided by Charter Oak that actually supports its position is a treatise on workers' compensation. Unfortunately for Charter Oak, the treatise is so incoherent on the issue presented here that its text directly supports the other side's position as well. Compare California Civil Practice Workers' Compensation § 16:26 ("[Section 3854] means that the full amount paid by the compensation carrier *is deemed to have been reasonable*." (emphasis added)), with id. ("The employer must, however, still be prepared at the time of the trial *to prove the reasonableness and necessity of the workers' compensation expenditures* made to the injured employee." (emphasis added)). This Court concludes that the treatise's second statement, rather than its first, is the accurate description of California law.

Conversely, however, Sodexho has offered no authority for the proposition that evidence of workers' compensation payments must be *excluded*. To begin, the statutory text clearly states otherwise. See Cal. Labor Code § 3854 ("[E]vidence of any amount which the [insurer] has paid or become obligated to pay by reason of the injury or death of the employee *is admissible* . . . ." (emphasis added)). Moreover, in Breese, the Supreme Court

7

noted that, in response to an insurer's or employer's claim for reimbursement of workers' compensation payments, an alleged tortfeasor must have "the opportunity of presenting evidence to the contrary." 29 Cal. 3d at 931. This begs the question: to the contrary of what? By implication, the California Supreme Court's decision in Breese affirms that the alleged tortfeasor must submit its evidence in opposition to the workers' compensation payments offered by the employer or insurer as evidence of the employee's injury. Thus, both Section 3854 and the Breese decision compel the conclusion that evidence of Charter Oak's payments are admissible, but not incontrovertible, proof of Whyman's injuries.

The Court therefore holds that Charter Oak's payment of Whyman's workers' compensation claim is *admissible* evidence to prove the extent of the damages caused by Sodexho's alleged negligence. The Court also holds that such payments are admissible to establish the maximum amount *recoverable* by Charter Oak against third-party tortfeasors, including Sodexho. The Court further holds, however, that such evidence does not automatically establish the scope of Charter Oak's recovery. Instead, the Court holds that Charter Oak must "otherwise establish[]" the extent of the injuries that were caused by Sodexho's alleged negligence, Breese, 29 Cal. 3d at 929, and that Sodexho "must be permitted the opportunity of presenting evidence" to challenge "the amount of tort damages reasonably resulting therefrom," id. at 931, including whether such damages were caused by or should be paid by other potential tortfeasors. For these reasons, Sodexho's motion *in limine* to exclude evidence of Whyman's workers' compensation award is DENIED. For the same reasons, Charter Oak's motion *in limine* is GRANTED, insofar as it seeks to introduce evidence of payments made to Whyman under its workers' compensation policy, but DENIED insofar as it seeks to introduce such evidence as conclusive proof of the amount of Charter Oak's recovery.

**IT IS SO ORDERED.**

Dated: March 13, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2002\3894\order2.wpd        8